IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WALTER EVANS, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>  Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____) | CIVIL NO. 3:11-cv-803-JRS |

## REPORT AND RECOMMENDATION

Walter Evans ("Plaintiff") did not complete high school, cannot read or write and has borderline intellectual functioning. On November 7, 2008, Plaintiff applied for Social Security Disability ("DIB") under the Social Security Act (the "Act") with an alleged onset date of January 31, 2008, alleging he was a "slow learner" who "can't read or write much." Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for DIB benefits. The Appeals Council subsequently denied Plaintiff's request for review on October 4, 2011.

Plaintiff now challenges the ALJ's denial of DIB benefits, asserting that the ALJ erred when assessing his residual functional capacity ("RFC"). (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 18-23.) In his decision, the ALJ found that Plaintiff had the RFC to perform simple, unskilled work at all exertional levels that did not require reading and writing. (R. at 15.) In doing so, the ALJ rejected the opinions of two consulting doctors. (*See* R. at 15-17.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[1] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment and motion to remand (ECF Nos. 10 & 11) be DENIED; that Defendant's motion for summary judgment (ECF No. 13) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. MEDICAL HISTORY

Plaintiff challenges his RFC, arguing that he is totally disabled from his borderline intellectual functioning. Outside of the opinions of the consulting psychologists, there are no medical records detailing Plaintiff's mental state. The treating and non-treating doctors' opinions are integral in the ALJ's findings and therefore are summarized below, along with Plaintiff's activities of daily living.

### A.  Plaintiff's Testimony of His Limitations

In his Function Report, Plaintiff indicated that he performed all household chores. (R. at 176.) He wrote that he shopped for one hour a day to help his sister. (R. at 177.) Plaintiff also visited his father daily, prepared small meals, socialized, maintained personal care and maintained a girlfriend. (R. at 175, 329-31, 363.) Plaintiff worked full-time for a few months

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

after his alleged onset date; his job ended only because he and the other workers were laid off. (R. at 34, 362.)

At the hearing, Plaintiff testified that he was looking for work and would take whatever job that he could perform, including raking leaves. (R. at 33.) He testified that he could work at a carwash. Plaintiff's own counsel admitted that Plaintiff could perform work, but argued that Plaintiff would have difficulty completing tasks without constant supervision. (R. at 38.) Plaintiff's counsel also indicated that Plaintiff should be referred for vocational rehabilitation. (R. at 41.)

**B.     Opinion Evidence of Dr. Russell, Consulting Psychologist**

On April 17, 2008, Plaintiff met with Karen Russell, Psy.D. for a psychological report. (R. at 328.) Clinical notes were not available. (R. at 331.) Dr. Russell noted that Plaintiff "was not putting forth his best effort" during the interview and that it "appeared that there was a deliberate performance on his part to appear confused," because Plaintiff "was answering questions posed to him without difficulty" during the initial part of the interview. (R. at 330.) Dr. Russell further indicated that Plaintiff's "credibility need[ed] to be questioned as it appear[ed] that he was staging some exaggerated intellectual weakness." (R. at 331.)

Dr. Russell noted that Plaintiff seemed to have a mid-borderline range of intellectual potential. (R. at 333.) She opined that Plaintiff could perform simple, routine, repetitive tasks without impairment and that Plaintiff's ability to understand, retain and follow instructions was intact. (R. at 333.) Dr. Russell further opined that Plaintiff could relate to coworkers and tolerate the pressures of daily work, but he might "possibly [be] limited to a structured environment." (R. at 333.)

### C. Opinion Evidence of Dr. Fielding, Consulting Psychologist

On March 24, 2009, Michael Fielding, Ph.D., met with Plaintiff for a psychology report. (R. at 360-70.) After having read Dr. Russell's report, Dr. Fielding explained to Plaintiff that he had to "'bring his A game'" to the evaluation. (R. at 360-61.) After evaluating Plaintiff, Dr. Fielding determined that Plaintiff was malingering, at least in part, when he was examined by Dr. Russell. (R. at 367.) Dr. Fielding diagnosed Plaintiff as being in the lower portion of the borderline intellectual functioning range. (R. at 368.) He noted that Plaintiff's "thought processes were logical and organized at a level expected for someone with [an] IQ in the lower borderline range." (R. at 363.)

Plaintiff was "very discouraged" about not finding work. (R. at 369.) Dr. Fielding noted that Plaintiff stated that "jobs are hard to come by out where he lives." (R. at 362.) Dr. Fielding opined that Plaintiff would work at a slower pace than his peers and make mistakes if he was not properly supervised. (R. at 370.) While Plaintiff could complete a workday or workweek, it would not be at the same rate as his same aged peers and he would need breaks every two hours. (R. at 370.) Therefore, Dr. Fielding concluded that Plaintiff could "function in a competitive work environment if special considerations [were] maintained such as apparently were in place" where he previously worked. (R. at 370.)

### D. Opinion of Non-treating State Agency Doctors

On April 30, 2008, Plaintiff's claim was referred to Dr. Stephen Saxby, a non-treating state agency doctor, for a Psychiatric Review and a Mental Residual Functional Capacity Assessment. (R. at 334-52.) Dr. Saxby marked that Plaintiff had a moderate degree of limitation in maintaining concentration, persistence or pace. (R. at 345.) He marked that Plaintiff was

4

significantly limited or moderately limited in most categories, and markedly limited in having the ability to understand, remember or carry out detailed instructions. (R. at 349-50.)

Dr. Saxby noted that Plaintiff had a limited ability to understand and remember complex or detailed instructions. (R. at 351.) Dr. Saxby indicated that Plaintiff could be able to understand, remember and carry out simple one and two step instructions and make simple decisions. (R. at 351.) After summarizing Dr. Russell's opinion, Dr. Saxby adopted it and gave it great weight in his assessment. (R. at 354-55.)

On April 4, 2009, Plaintiff's claim was referred to Dr. David Niemeier, a non-treating state agency doctor, for a Psychiatric Review and a mental Residual Functional Capacity Assessment. (R. at 371-89.) Dr. Neimeier confirmed Plaintiff's diagnosis of borderline intellectual functioning (R. at 375) and marked that Plaintiff had a moderate degree of limitation in maintaining social functioning, concentration, persistence or pace (R. at 382).

Dr. Neimeier further marked that Plaintiff was significantly limited or moderately limited in all categories. (R. at 386-87.) Dr. Neimeier opined that Plaintiff could understand, retain and follow simple job instructions, maintain concentration and attention for moderate periods of time, complete a normal workday and workweek and "should be able to perform at least SRT [simple routine tasks] with limited public contact." (R. at 388.) Dr. Neimeier placed great weight on Dr. Fielding's report and concluded that Plaintiff was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R. at 388.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on November 7, 2008, claiming disability due to being a "slow learner" who "can't read or write much" with an alleged onset date of January 31, 2008.

(R. at 127, 197, 202.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 59-77.) On April 28, 2009, Plaintiff testified before an ALJ. (R. at 10.) On June 24, 2010, the ALJ issued a decision finding that Plaintiff was not under a disability, as defined by the Act. (R. at 19.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on October 4, 2011, making the ALJ's decision the final decision of the Commissioner and subject to judicial review by this Court. (*See* R. at 1-3.)

### III. QUESTION PRESENTED

Did the ALJ err in formulating Plaintiff's residual functional capacity?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a

7

analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work

---

profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

8

can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Bowen*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

### V. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since January 31, 2008. (R. at 12.) At step two, the ALJ determined that Plaintiff was severely impaired from borderline intellectual functioning. (R. at 12.) At step three, the ALJ concluded

that Plaintiff's maladies did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 13-15.)

Next, the ALJ determined that Plaintiff had the RFC to perform simple, unskilled work at all exertional levels that did not require reading or writing. (R. at 15.) In doing so, the ALJ noted that Plaintiff was 49 years-old, could not read or write, did not complete high school, had been told he was too slow to perform some work, was willing to work and had no physical impairments. (R. at 16.) Plaintiff's sister indicated that Plaintiff was independent in self care, but had trouble completing tasks and understanding and following directions. (R. at 16.)

The ALJ determined that Plaintiff functioned at the borderline range of intellectual functioning and was able to engage in SGA for six years, despite his intellectual capabilities and allegations of being "slow." (R. at 16.) Additionally, Plaintiff's psychological examinations concluded that he could perform three-step commands and could concentrate for short periods of time, which is inconsistent with a claim of complete disability. (R. at 16.) Regardless, the ALJ determined Plaintiff had some limitations resulting from his impairments. (R. at 16.)

The ALJ then discussed the opinion evidence from Drs. Russell and Fielding. (R. at 16-17.) Dr. Russell opined that Plaintiff could perform simple, routine repetitive tasks, but would be limited to a structured environment. (R. at 16.) The ALJ did not agree with this opinion, because Dr. Russell noted that Plaintiff was "not putting forth his best effort" and deliberately appeared confused. Continuing, the ALJ noted that Plaintiff had been able to work at SGA levels for six years in a non-structured environment. (R. at 17.) The ALJ summarized Dr. Fielding's opinion, which indicated that Plaintiff could maintain regular attendance, work two hours at a time without a break, could complete a normal workweek at a slower pace than his peers, could perform activities on a consistent basis with his peers and would make mistakes and

10

work slowly if not supervised properly. (R. at 16-17.) The ALJ generally agreed with this opinion. (R. at 17.)

The ALJ also considered the opinions of the non-treating state agency doctors who opined that Plaintiff could perform simple, routine, repetitive tasks with limited public contact. (R. at 17.) The ALJ assigned these opinions significant weight, as they were consistent with the record. (R. at 17.)

At step four, the ALJ assessed that Plaintiff was unable to perform any past relevant work, given the complex nature of working with batteries. (R. at 17.) The ALJ determined that, based on Plaintiff's current age, limited education, inability to read or write and ability to communicate in English, there were a significant number of jobs in the national economy that Plaintiff could perform. (R. at 17-18.) As a result, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act. (R. at 18.)

Plaintiff asserts that the ALJ failed to consider all of Plaintiff's limitations in his RFC. (Pl.'s Mem. at 18.) More specifically, Plaintiff argues that the ALJ's RFC determination was less limited than the doctors' opinions. (Pl.'s Mem. at 18.) Defendant disagrees, noting that the ALJ followed the recommendations of the non-treating state agency doctors. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 15-16.) Defendant also argues that substantial evidence supported the ALJ's decision. (Def.'s Mem. at 11-16.) Substantial evidence did support the ALJ's determination of Plaintiff's RFC, as the ALJ properly evaluated the medical opinions included in the record.

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if: (1) it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with other substantial evidence in the record. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. *Jarrells v. Barnhart*, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *see also* 20 C.F.R. § 404.1527(d)(3)-(4), (e); *Mastro*, 270 F.3d at 178 (treating physician opinions may be assigned less weight when there is "persuasive contrary evidence").

If a medical opinion is not assigned controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the

physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

Dr. Russell's opinion was assigned little weight by the ALJ, because Plaintiff had been malingering during his examination. (R. at 17.) In her report, Dr. Russell questioned Plaintiff's credibility and noted that Plaintiff "was not putting forth his best effort" and deliberately appeared to be confused. (R. at 330-31.) Even Dr. Fielding in his report determined that Plaintiff was malingering, at least in part, when he was examined by Dr. Russell. (R. at 367.) As Plaintiff was malingering during his exam, the weight assigned to Dr. Russell's opinion by the ALJ was therefore justified.

The ALJ generally agreed with Dr. Fielding's opinion. (R. at 17.) Dr. Fielding opined that Plaintiff could "function in a competitive work environment if special considerations [were] maintained." (R. at 370.) He also determined that Plaintiff would work at a slower pace than his peers and make mistakes if he was not properly supervised. (R. at 370.) Dr. Fielding opined that Plaintiff would need a break every two hours. (R. at 370.)

However, both non-treating state agency doctors indicated that Plaintiff could understand, remember and carry out simple one and two step instructions and make simple decisions. (R. at 351, 388.) Dr. Neimeier concluded that Plaintiff could "meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R. at 388.) The ALJ afforded these opinions significant weight, as they were consistent with the

sparse record. (*See* R. at 17.) The ALJ essentially mirrored these opinions when he determined Plaintiff's RFC.

Substantial evidence supported the ALJ's determination that Plaintiff had the RFC to perform simple, unskilled work at all exertional levels that did not require reading or writing. While Plaintiff had a borderline intellectual ability, his limited intellect did not raise to the level of disability. Plaintiff worked full-time for a few months after his alleged onset date; he only stopped working because he was laid off. (R. at 34, 362.) Plaintiff testified at the hearing that he could and would like to work. (R. at 33, 38.) Even his own counsel admitted that Plaintiff could perform work and even requested Plaintiff be referred for vocational rehabilitation. (R. at 38, 41.) During his interview with Dr. Fielding, Plaintiff stated that he was "very discouraged" that he had not found work and that jobs were hard to find where he lived. (R. at 369, 362.)

Plaintiff could and wanted to work; he just could not find any work during an economic downturn in a rural area of Virginia. Plaintiff's situation did not rise to the level of disability. Therefore, the ALJ did not err when he determined Plaintiff's RFC.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment and motion to remand (ECF Nos. 10 & 11) be DENIED; that Defendant's motion for summary judgment (ECF No. 13) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ _____

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: July 11, 2012